IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACEY & ALEMAN, THOMAS G. MACEY, individually, and JEFFREY J. ALEMAN, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10-cv-06646 |
| v. | ) ) | |
| CARLENE M. SIMMONS, and ELIZABETH C. KAMPER, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs, Macey & Aleman, Thomas G. Macey, and Jeffrey J. Aleman (collectively, "Macey & Aleman") filed suit against the defendants, Carlene M. Simmons and Elizabeth C. Kamper ("Defendants"), for alleged conduct related to Defendants' termination of employment with the Macey & Aleman law firm. Defendants have since moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, Defendants' motion is denied.

BACKGROUND

Macey & Aleman is an Illinois partnership with its principal place of business located in Chicago, Illinois and law offices in twenty different states. (Dkt. No. 1 ("Compl.") ¶ 5.) Macey & Aleman is managed by four partners from its Chicago office, including Thomas G. Macey, the Owner and Managing Partner, and Jeffrey J. Aleman, a Senior Partner. (*Id.* ¶ 6.) The firm

primarily handles bankruptcy cases for Chapter 7 and Chapter 13 debtors but also handles Fair Debt Collection Practice Act cases and provides assistance for various types of injury claims. (*Id.* ¶ 5.)

Defendants, Carlene M. Simmons ("Simmons") and Elizabeth C. Kamper ("Kamper"), are Arizona citizens who are licensed to practice law in the State of Arizona. (*Id.* ¶¶ 8, 9.) On October 17, 2005, Simmons began working for Macey & Aleman's Phoenix, Arizona office as an Associate Attorney. (*Id.* ¶ 8.) She received a promotion on June 26, 2008 to become the office's sole Managing Attorney. (*Id.*) To receive this promotion, Simmons signed an Employment Agreement and a Confidentiality Agreement with Macey & Aleman that governed her employment with the firm. (*Id.*) Kamper began working at the same Macey & Aleman Phoenix, Arizona office as an Associate Attorney on June 9, 2009. (*Id.* ¶ 9.) She similarly signed an Employment Agreement and a Confidentiality Agreement that governed her employment. (*Id.*) The Employment and Confidentiality Agreements that Simmons and Kamper signed (referred to collectively as the "Agreements") were each drafted in Macey & Aleman's Chicago headquarters.[1] (*Id.* ¶¶ 8, 9.) The Employment Agreements each contain the following provisions:

- The provisions of this contract are governed by Illinois law.

---

[1] This court is not in possession of the exhibits attached to the Plaintiffs' Verified Complaint, which was filed in the Circuit Court of Cook County, Illinois on October 15, 2010. Simmons and Kamper, however, have not raised any dispute regarding the Agreements' language used in the Complaint or Macey & Aleman's response to their motion to dismiss, so this court will use and refer to the language and contract terms as they appear in the Complaint and in Macey & Aleman's response.

- Any dispute arising under this agreement is to be resolved in a court of competent jurisdiction in Illinois.

(Dkt. No. 14 ("Pls.' Resp.") at 3 (quoting Exhs. A and B at ¶¶ 15–16 and 19).)

The Confidentiality Agreements each contain the following language:

- This agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

- I agree that any clams [sic] arising out of this agreement shall be litigated, mediated, arbitrated, or otherwise in Cook County, Illinois.

(Pls.' Resp. 3 (quoting Exhs. C at ¶¶ 9–10 and D at ¶¶ 10–11).)

The dispute in this case arises from Simmons and Kamper's departure from Macey & Aleman on July 2, 2010. (Compl. ¶ 14.) In separate, nearly identical emails to three of Macey & Aleman's four partners, Simmons and Kamper declared on July 2 that they were resigning from the firm but would provide any assistance requested during the following two weeks. (*Id.* ¶ 18, n.1.) Macey & Aleman has alleged that, around this time period, Simmons and Kamper "solicited employees for a mass exodus, downloaded, copied, retained and destroyed confidential client information, mismanaged the firm's financial affairs . . . . [and] use[d] the stolen client information to unilaterally contact and solicit Macey's clients while disparaging Macey & Aleman . . . ." (*Id.* ¶ 1.) Based on the allegations relating to Simmons and Kamper's termination of employment with Macey & Aleman, Macey & Aleman filed a five-count

3

complaint in the Circuit Court of Cook County on September 10, 2010. (*Id.* ¶¶ 1–89.) The complaint sought damages for conversion, breach of contract, breach of fiduciary duties, tortious interference with business expectancy, and defamation. (*Id.* ¶ 2.)

In accordance with 28 U.S.C. § 1332, Simmons and Kamper removed the case to this court on October 15, 2010 based on diversity jurisdiction. (*Id.*) Pending before the court is Simmons and Kamper's November 30, 2010 Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Procedure 12(b)(2), in which they contend the claims against them must be dismissed for lack of personal jurisdiction. (Dkt. No. 11 ("Defs.' Mot.") at 1.)

## LEGAL STANDARD

Federal district courts sitting in diversity have personal jurisdiction only if a state court in the state in which the district court resides could exercise personal jurisdiction over the parties. *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997). A plaintiff must demonstrate that the defendants are "amenable to process under an appropriate [Illinois] statute, and that it is consistent with due process to require them to submit to litigation in an Illinois court." *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). A defendant waives the ability to challenge personal jurisdiction if the defendant consents to an enforceable forum selection clause contained in a valid contract. *See IFC Credit Corp. v. Aliano Bros. Gen. Contrs., Inc.*, 437 F.3d 606, 610 (7th Cir. 2006). "To determine whether defendants have waived their objections, we must decide: (1) whether the clause in the agreement is, in fact, a forum-selection clause; and, if so (2) whether the clause is enforceable." *IFC Credit Corp. v. Burton Indus.*, No. 04 C 5906, 2005 WL 1243404, at *2 (N.D. Ill. May 12, 2005).

4

In making these determinations, the court must first determine whether state or federal law governs. *Id.* at *2 n.2. Generally, a choice of law provision in a valid contract applies to any dispute arising out of that contract, including disagreements regarding the enforceability of a forum selection clause contained therein. *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 425 (7th Cir. 2007); *see also IFC Credit Corp. v. United Business & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) (noting "the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute."). The Agreements between the parties declare that Illinois law will govern the Agreements. (Pls.' Resp. 3) (Employment Agreements: "The provisions of this contract are governed by Illinois law." Confidentiality Agreements: "This agreement shall be construed in accordance with and governed by the laws of the State of Illinois."). Accordingly, as discussed in detail in Section 2.i., this court will apply Illinois law in the analysis that follows.[2]

If the forum selection clause is invalid, this court may still have personal jurisdiction over Simmons and Kamper if they have "minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kinslow v. Pullara*, 538 F.3d 687, 690–91 (7th Cir. 2008) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002)).

## ANALYSIS

---

[2] "Illinois law concerning the validity of forum selection clauses is materially the same as federal law," but Illinois law tends to be more lenient than federal law when a significant inequality in bargaining power exists between the parties. *Aliano Bros. Gen. Contrs., Inc.*, 437 F.3d at 611. In this case, if the forum selection clause is valid under Illinois law, then it is also valid under federal law.

1. The Clause is a Forum Selection Clause

A clause in a contract is a forum selection clause if it includes "[m]andatory language [which] indicates that the parties have selected a particular forum" for any disputes arising out of the agreement. *Burton Indus.*, 2005 WL 1243404, at *2. The Employment Agreements state, "Any dispute arising under this agreement is to be resolved in a court of competent jurisdiction in Illinois." (Pls.' Resp. 3.) The Confidentiality Agreements provide, "I agree that any [claims] arising out of this agreement shall be litigated, mediated, arbitrated, or otherwise in Cook County, Illinois." (*Id.*) Neither party disputes that the mandatory language in each provision is representative of a forum selection clause or that Macey & Aleman's breach of contract claim arises out of the Agreements. This court thus turns its attention to whether the clauses are in fact enforceable.

2. The Forum Selection Clauses are Enforceable

Simmons and Kamper contend that the forum selection clauses in their Agreements are unreasonable and should not be enforced. (Defs.' Mot. 6.) They face an "uphill struggle" in attempting to invalidate the forum selection clauses. *Heller Fin., Inc. v. Midway Powder Co.*, 883 F.2d 1286, 1290 (7th Cir. 1989). A forum selection clause "is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Williams v. Ill. State Scholarship Com.*, 563 N.E.2d 465, 486 (Ill. 1990). Mere inconvenience to a party is insufficient to invalidate a forum selection clause, and courts will enforce such clauses unless enforcement "contravene[s] the strong public policy of the forum or the chosen forum [is] 'seriously inconvenient for the trial of the action.'" *IFC Credit Corp. v.*

*Rieker Shoe Corp.*, 881 N.E.2d 382, 389 (Ill. App. Ct. 1st Dist. 2007) (quoting *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1st Dist. 1987)). Illinois courts employ a six-factor test to determine the reasonableness of a forum selection clause. *Calanca*, 510 N.E.2d at 23. Those factors include:

> (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; (4) the location of the parties and witnesses participating in the litigation[;] (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for.

*Id.* at 23–24 (quoting *Clinton v. Janger*, 583 F. Supp. 284, 289 (N.D. Ill 1984) (internal quotes and citations omitted)).

Each of these factors will be analyzed in turn to determine whether the forum selection clause at issue is reasonable. Even if a majority of the factors favor litigation in another forum, this court may still conclude that the clause is reasonable. *See Dace Int'l v. Apple Computer*, 655 N.E.2d 974, 977 (Ill. App. Ct. 1st Dist. 1995) (concluding that the forum selection clause was reasonable even though four of the six factors favored litigation in a different forum).

      i.   Law Governing the Formation and Construction of the Agreements

The Employment and Confidentiality Agreements at issue provide for Illinois law to govern the Agreements and any disputes arising out of them. (Pls.' Resp. 3.) "Under Illinois law, a choice of law clause is prima facie valid and should be enforced unless the opposing party shows that enforcement would contravene the strong public policy of the State." *Cummins v. Bickel & Brewer*, No. 00 C 3703, 2001WL 204797, at *3 (N.D. Ill. Mar. 1, 2001); *see also Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 2003) (enforcing a Kentucky choice of law

7

provision because it was not contrary to the public policy of Illinois). Simmons and Kamper contend the provisions in the Employment Agreements that required them "to pay Macey & Aleman $700.00 for each client that decided to follow [them] to their new firm" (the "notice" and "penalty" provisions), violate Arizona's ethical rules. (Defs.' Mot 8–9.) From this position, Simmons and Kamper argue that "Arizona's interest in regulating the activities of its lawyers clearly supersedes [Macey & Aleman's] right to enforce provisions in their contracts that were inserted merely for [Macey & Aleman's] convenience." (*Id.* at 8.) This argument regarding Arizona's interest in the case misses its mark, as the relevant question before the court is whether the parties' choice of law provision contravenes *Illinois* public policy. Simmons and Kamper admit that Illinois law also discourages unreasonable restrictions on an attorney's right to practice. (*Id.* at 8 n.4.) If applying Illinois law yields the same result as applying Arizona law, no conflict of public policy law exists regardless of which state's law is applied.[3] It follows that Simmons and Kamper's cited cases do not support their assertion that Illinois public policy is violated by applying the choice of law provision. S*ee* Arizona Ethics Opinion 09-01 (holding that a contract requiring a departing attorney to pay $3,500 for each client he retains is unenforceable); *Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C.*, 138 P.3d 723, 729 (Ariz.

---

[3] This court expresses no opinion as to whether the "notice" and "penalty" provisions are enforceable under Arizona or Illinois law or whether they are in violation of either the Arizona or Illinois Rules of Professional Responsibility. To the extent Simmons and Kamper suggest that the Agreements are unenforceable in their entirety, which in turn would invalidate the choice of law provision, (Defs.' Mot. 9), this court declines to first make a determination as to whether the Agreements are void before ruling on the motion. *See Muzumdar v. Wellness Intl'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) ("The logical conclusion of the argument would be that the federal courts in Illinois would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all.").

2006) (concluding that a restriction on an attorney's right to "represent certain clients or engage in practice in certain areas or at certain times" is unenforceable). Illinois law will therefore be applied to the Agreements in accordance with the choice of law provisions, and the first factor falls in favor of adjudicating this lawsuit in Illinois.[4]

### ii. Residency of the Parties

Macey & Aleman are residents of Illinois, while Simmons and Kamper are both citizens and residents of Arizona. Regardless of where the case is litigated, one of the parties will be forced to litigate in an out-of-state forum. Simmons and Kamper have not provided any evidence that moves this dispute out of the ordinary realm of parties residing in two separate states.

### iii. Where the Agreements were Executed and Performed

Simmons and Kamper are correct in their assertion that the Agreements were executed and performed in Arizona, the state in which they rendered legal services on behalf of Macey & Aleman. (Defs.' Mot. 9.) This court takes notice that Simmons travelled to Illinois for a training session, and both Simmons and Kamper were in contact with Macey & Aleman's Chicago office through "email, facsimile, telephone or . . . accessing documents through the computer database," (Pls.' Resp. 4), but the substance of Simmons and Kamper's employment obligations

---

[4] A forum selection clause can also be found invalid if the clause was procured as a result of fraud, *Muzumdar,* 438 F.3d at 762, but Simmons and Kamper have not put forth any such allegations. Any argument based on fraud is waived. *See Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) ("[U]nsupported and underdeveloped arguments are waived.").

were completed in Arizona. Simmons and Kamper were hired as Arizona attorneys and only performed legal services in Arizona. The third factor weighs in favor of Simmons and Kamper.

iv. Location of the Parties and Witnesses in the Dispute

Looking to the fourth factor, Simmons and Kamper contend that the current and former witnesses from Macey & Aleman's Phoenix office and all relevant evidence are located in Arizona, though they do not identify the names of any witnesses or the substance of their testimony. (Defs.' Mot. 4.) Macey & Aleman argues that other witnesses will be called from Illinois and Wisconsin, and any documentary evidence can easily be shipped, scanned, or emailed. (Pls.' Resp. 10.) In this day and age, witnesses can easily travel to and from states, *see Wendt v. Offshore Trust Serv.*, No. 08 C 3612, 2010 WL 1849426, at *7 (N.D. Ill. 2010) (reasoning that "Illinois is not so 'far away' from Kentucky, especially given the ease of modern travel"), and the document evidence in this case is not so cumbersome that Simmons and Kamper could not gain access to it if this case remains in Illinois. *See First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 909 (N.D. Ill 2006) ("When documents are easily transferable, access to proof is a neutral factor."). This factor does not favor either forum.

v. Inconvenience to the Parties if the Case Remains in Illinois

It goes without saying that litigating a case in one's home state is more convenient for a defendant, but "mere inconvenience does not provide a basis for voiding a forum selection clause." *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 390 (Ill. App. Ct. 1st Dist. 2007). Simmons and Kamper contend that the burden on Macey & Aleman is "limited" and that they, in turn, will be deprived access to witnesses and evidence. (Defs.' Mot. 10.) Nothing in

this case suggests that Simmons and Kamper will be unable to mount a defense to the allegations or be denied their day in court if the forum selection clause is enforced. *See* Fed. R. Civ. P. 32(a)(4)(B) (approving the use of deposition testimony at trial if a witness is located more than 100 miles from the place of trial). In short, Simmons and Kamper's argument on this point does not provide sufficient reason to disregard the Agreements' forum selection clauses.

      vi. Bargaining Power of the Parties

"The choice of forum made in an arm's length negotiation by experienced and sophisticated businessmen, absent some compelling and countervailing reason, should be honored by the parties and enforced by the courts." *See, e.g.*, *English Co. v. Northwest Envirocon, Inc.*, 663 N.E.2d 448, 451 (Ill. App. Ct. 2d Dist. 1996). Simmons and Kamper rely on *Mellon First United Leasing v. Hansen*, 705 N.E.2d 121 (Ill. App. Ct. 2d Dist. 1998), and *American Food Management, Inc. v. Henson*, 434 N.E.2d 59 (Ill. App. Ct. 5th Dist. 1982), to support their contention that Macey & Aleman was in an unfairly superior bargaining power when they signed the Employment and Confidentiality Agreements. (Defs.' Mot. 6–7.) Macey & Aleman, however, was not a large corporation taking advantage of "an ordinary consumer involved in a small transaction." *Compare Mellon*, 705 N.E.2d at 126 (involving a suit between a plaintiff leasing company from Illinois and a defendant certified public accountant in California who had started a new business in office space leased by the plaintiff). It is uncontested that all parties involved in this case are licensed attorneys at law, and having an attorney in any context can be "a very compelling means of rebutting a presumption of undue influence." *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019,

1036 (Ill. Appt. Ct. 2007). The fact Simmons and Kamper had not been practicing attorneys as long as Macey & Aleman when they signed the Agreements is of little help. This is not the type of unequal bargaining power that Illinois courts have held to be unconscionable. *See, e.g.*, *Williams*, 563 N.E.2d at 467, 487 (involving the Illinois State Scholarship Commission (ISSC), a State agency that provided financial assistance to students in undergraduate, graduate, and vocational educational programs through "take it or leave it" loan agreements); *Martin-Trigona v. Roderick*, 331 N.E.2d 100, 100–01 (Ill. App. Ct. 1st Dist. 1975) (involving apartment renters who were forced to choose between signing an apartment lease or searching for new housing).

In *American Food Management*, the defendant was a college student in Missouri who entered into an oral agreement to work for the plaintiff corporation that required him to relocate to Kansas. *Am. Food Mgmt.*, 434 N.E.2d at 60. The defendant had been working for the plaintiff for a week to ten days when he received a letter from the plaintiff requesting him to sign the enclosed contract which included a covenant not to compete. *Id.* at 61. Before the defendant began working for the plaintiff, the parties had never discussed a written contract or an agreement not to compete. *Id.* The plaintiff's president admitted that the defendant would have been fired if he did not sign the agreement, and the defendant acknowledged that he signed the contract because he had already moved to Kansas and would lose his job if he did not sign it. *Id.* The appellate court held that the failure to "give reasonable notice that agreement to a covenant not to compete would be a condition of employment before defendant . . . had relocated and begun working for plaintiff amounted to overreaching by a contracting party in an unfairly superior bargaining position." *Id.* at 63. Therefore, the contract was unconscionable and could not be enforced. *Id.*

12

Initially, the *American Food Management* court was applying Missouri law, though it concluded the result would likely be the same under Illinois or Missouri law. *Id.* at 62. Nonetheless, the facts in *American Food Management* are easily distinguished from this case. Simmons and Kamper were not forced to relocate to a different state before signing the Agreements. Simmons did not receive her promotion until after she signed the Agreements, and Kamper did not begin working for Macey & Aleman until after she signed the Agreements. Both Similar and Kamper were aware of the Employment and Confidentiality Agreement provisions before signing them—there is no contention that the forum selection clauses were "boiler plate" language hidden on the back or in fine print, *see Mellon*, 705 N.E.2d at 125–26—but that alone does not govern the bargaining-power issue.

Contrary to Simmons and Kamper's contention, Macey & Aleman did not offer the Agreements on a strictly "take it or leave it" basis. *See Keefe v. Allied Home Mortg. Corp.*, 912 N.E.2d 310, 316 (Ill. App. Ct. 5th Dist. 2009). Simmons and Kamper acknowledge that they had the opportunity to negotiate the Agreements' salary terms, though only Simmons did. (Defs.' Mot. 11.) Their failure to negotiate the forum selection clause or voice their objections to it does not lend support to invalidating it. *Burton Indus.*, 2005 WL 1243404, at *5. Similarly, contending that "further negotiation would not be permitted" does not justify a conclusion that Macey & Aleman was in an unfairly superior bargaining position. *See Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (rejecting the employee's argument that "acceptance of the dispute resolution provisions in this case was illusory by virtue of the fact that [the employer] gave her little choice in the matter."). The bargaining power between the parties was

13

not so unequal as to support a conclusion that the forum selection clause is unreasonable. The sixth and most important factor under Illinois law favors Macey & Aleman.

Simmons and Kamper faced an uphill struggle in attempting to invalidate the forum selection clause, and they have failed to reach their destination. A detailed analysis of the six factors governing the reasonableness of the Agreements' forum selection clauses demonstrates that the forum selection clauses are in fact reasonable. This court concludes that Simmons and Kamper have waived their ability to contest personal jurisdiction in this court by agreeing to the forum selection clauses in the Employment and Confidentiality Agreements. Because personal jurisdiction is proper over Simmons and Kamper through the enforceable forum selection clauses, this court need not undertake a minimum contacts analysis and expresses no opinion as to the merits of such an analysis.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 11) is denied. Defendants' answer is due on or before April 28, 2011. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before May 5, 2011. Status hearing set for May 12, 2011 at 9:00 a.m. for purposes of scheduling further dates. Parties are encouraged to discuss settlement.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 14, 2011